# IMMIGRATION AND NATURALIZATION SERVICE ET AL. *v.* NATIONAL CENTER FOR IMMIGRANTS' RIGHTS, INC., ET AL.

No. 90–1090.   Argued November 13, 1991—Decided December 16, 1991

STEVENS, J., delivered the opinion for a unanimous Court.

*Stephen J. Marzen* argued the cause for petitioners. With him on the briefs were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor General Shapiro, Barbara L. Herwig,* and *John F. Daly.*

*Peter A. Schey* argued the cause for respondents. With him on the brief were *Michael Rubin* and *Robert Gibbs.* *

JUSTICE STEVENS delivered the opinion of the Court.

This case presents a narrow question of statutory construction. Section 242(a) of the Immigration and Nationality Act (INA) authorizes the Attorney General to arrest excludable aliens and, pending a determination of their deportability, either to hold them in custody or to release them on bond "containing such conditions as the Attorney General may prescribe." 66 Stat. 208, as amended, 8 U. S. C.

---

*Briefs of *amici curiae* urging affirmance were filed for the American Bar Association by *John J. Curtin, Jr.,* and *Jonathan L. Abram;* for the American Immigration Lawyers Association by *Joshua Floum, Maureen Callahan,* and *Lawrence H. Rudnick;* and for the International Human Rights Law Group by *Nicholas W. Fels* and *Steven M. Schneebaum.*

§ 1252(a)(1).   We granted the Government's petition for certiorari to decide "[w]hether th[at] provision prohibits promulgation of a rule generally requiring that release bonds contain a condition forbidding unauthorized employment pending determination of deportability."   Pet. for Cert. I.

I

Prior to 1983, the regulations of the Immigration and Naturalization Service (INS) provided that, when an alien was released from custody pending deportation or exclusion proceedings, the INS could in its discretion include in the bond obtained to secure the alien's release a condition barring unauthorized employment.   8 CFR § 103.6(a)(2)(ii) (1982).   In 1983, the Attorney General amended those regulations to include the following provision:

> "(ii) *Condition against unauthorized employment.* A condition barring employment shall be included in an appearance and delivery bond in connection with a deportation proceeding or bond posted for the release of an alien in exclusion proceedings, unless the District Director determines that employment is appropriate."   8 CFR § 103.6(a)(2)(ii) (1991).[1]

---

[1] The regulation further provides:

"(iii) *Factors to be considered.*   Only those aliens who upon application under § 109.1(b) of this chapter establish compelling reasons for granting employment authorization may be authorized to accept employment. Among the factors which may be considered when an application is made, are the following:

"(A) Safeguarding employment opportunities for United States citizens and lawful permanent resident aliens;

"(B) Prior immigration violations by the alien;

"(C) Whether there is a reasonable basis for considering discretionary relief; and

"(D) Whether a United States citizen or lawful permanent resident spouse or children are dependent upon the alien for support, or other equities exist."   § 103.6(a)(2)(iii).

In effect, the new regulation made "no-employment conditions" the rule rather than the exception.

Several individuals and organizations (respondents) filed this action challenging the validity of the new rule on statutory and constitutional grounds. Their complaint alleged that the new rule was invalid on its face and therefore could not be enforced even against aliens who may not lawfully accept employment in this country.

After finding that the plaintiffs had a fair chance of success on the merits, either on the ground that the statute did not authorize no-employment conditions because such conditions were irrelevant to securing an alien's appearance at a subsequent deportation hearing, or on the ground that the regulation violated an alien's constitutional right to due process, the District Court entered a nationwide preliminary injunction against enforcement of the rule. The Court of Appeals affirmed in part, but held that the scope of the injunction should be limited to the named plaintiffs unless the District Court granted their motion to certify a class. *National Center for Immigrants' Rights, Inc.* v. *INS*, 743 F. 2d 1365 (CA9 1984).

On remand, the District Court entered summary judgment in favor of respondents on the ground that the regulation was beyond the statutory authority of the Attorney General and also certified a class consisting of "all those persons who have been or may in the future be denied the right to work pursuant to 8 CFR § 103.6." *National Center for Immigration Rights, Inc.* v. *INS*, No. CV 83–7927–KN (CD Cal., July 9, 1985), p. 1. The Court of Appeals again affirmed, concluding that the Attorney General's statutory "authority under 8 U. S. C. § 1252(a) of the Act is limited to the imposition of bond conditions which tend to insure the alien's appearance at future deportation proceedings. The peripheral concern of the Act with the employment of illegal aliens is not sufficient to support the imposition of a no-employment condition

in every bond." *National Center for Immigrants' Rights, Inc.* v. *INS*, 791 F. 2d 1351, 1356 (CA9 1986).

The Government petitioned for certiorari raising the same question that is now before us. The Government argued that because the regulation only barred "unauthorized" work by aliens, it merely added the threat of a bond revocation to the already existing prohibition against unauthorized employment. In view of the then-recent enactment of the Immigration Reform and Control Act of 1986 (IRCA), 100 Stat. 3359, which cast serious doubt on the Court of Appeals' conclusion that employment of undocumented aliens was only a "peripheral concern" of the immigration laws, we vacated that court's judgment and remanded for further consideration in the light of IRCA. 481 U. S. 1009 (1987). On remand, the District Court adhered to its original opinion that the Attorney General's discretion to impose bond conditions is "limited to those [conditions] aimed at obtaining an undocumented worker's appearance at future immigration proceedings." App. to Pet. for Cert. 68a. The District Court noted that the enactment of employer sanctions in IRCA made the question whether the employment of undocumented aliens is merely a "peripheral concern" of the INA more difficult, but concluded that this change in the law did not broaden the Attorney General's discretion.

A divided panel of the Court of Appeals again affirmed, but the majority did not rely on the District Court's reasoning. 913 F. 2d 1350 (CA9 1990). The majority first rejected the Government's interpretation of the new regulation as merely barring "'unauthorized employment'"; the Court of Appeals construed the rule as a "blanket bond condition" applicable to aliens authorized to work as well as to those who had no such authority. *Id.*, at 1353–1358. The majority then concluded that the Attorney General exceeded his statutory authority in promulgating the regulation, ruling that the Attorney General's discretion in imposing bond conditions was subject to two constraints. First, the court

ruled, a bond condition must relate either to securing the alien's appearance at a subsequent hearing or to protecting the Nation from danger posed by active subversives. A no-employment condition was not related to either of these purposes. *Id.*, at 1358–1372. Second, the Court of Appeals concluded, bond conditions may only be imposed on an individualized basis and therefore the "blanket rule" promulgated by the Attorney General was invalid. *Id.*, at 1373–1374.

We granted certiorari, 499 U. S. 946 (1991), and now reverse.

## II

It is appropriate that we preface our analysis by noting the narrowness of the question before us: We must decide whether the regulation *on its face* is invalid as inconsistent with the Attorney General's *statutory* authority.

We first observe that the plaintiffs framed their challenge to the regulation as a facial challenge. See App. 16–27. We recognize that it is possible that the no-work condition may be improperly imposed on some aliens. That the regulation may be invalid as applied in such cases, however, does not mean that the regulation is facially invalid because it is without statutory authority. Cf. *American Hospital Assn.* v. *NLRB*, 499 U. S. 606, 619 (1991); *Skinner* v. *Railway Labor Executives' Assn.*, 489 U. S. 602, 632–633, n. 10 (1989). In this case, we need not and do not address such "as-applied" challenges to the regulation.

We also note that, in invalidating the contested regulation, the Court of Appeals relied solely on statutory grounds, and did not reach the plaintiffs' constitutional challenge. See 913 F. 2d, at 1358, n. 8. Accordingly, only the plaintiffs' statutory challenge is before us and we resolve none of the constitutional claims raised by the plaintiffs' initial complaint.

## III

The threshold question in this case concerns interpretation of the regulation, which as the Government itself concedes, "is not unambiguous." Brief for Petitioners 23, n. 14. Indeed, as the dissenting judge in the Court of Appeals suggested, much of this controversy could have been avoided by a more precise drafting of the regulation, either initially or in response to any of the several lower court opinions. See 913 F. 2d, at 1375 (Trott, J., dissenting).

The most critical ambiguity in the regulation is whether the proposed no-work conditions bar all employment or only *unauthorized* employment—stated another way, whether such conditions will be imposed on all bonds or only on bonds issued for aliens who lack authorization to work. Although the relevant paragraph of the regulation is entitled "Condition against unauthorized employment," the text describes the restriction more broadly, as a "condition barring employment." Based in part on this latter phrase, the Court of Appeals interpreted the regulation as barring all employment, whether authorized or unauthorized. In contrast, the Government contends that the regulation only concerns the imposition of bond conditions in the case of aliens who lack work authorization in the first place.

We agree with the Government's interpretation of the regulation. In other contexts, we have stated that the title of a statute or section can aid in resolving an ambiguity in the legislation's text. See *Mead Corp.* v. *Tilley*, 490 U. S. 714, 723 (1989); *FTC* v. *Mandel Bros., Inc.*, 359 U. S. 385, 388–389 (1959). Such analysis obtains in this case as well. The text's generic reference to "employment" should be read as a reference to the *"unauthorized* employment" identified in the paragraph's title. Moreover, an agency's reasonable,

consistently held interpretation of its own regulation is entitled to deference. In this case, the Government has consistently maintained that the contested regulation only implicates bond conditions barring unauthorized employment.[2]

Our conclusion that the regulation does not contemplate the inclusion of no-work conditions in bonds issued to aliens who are authorized to work is further supported by the text of the regulation,[3] the agency's comments when the rule was promulgated,[4] the operating instructions issued to INS personnel,[5] and the absence of any evidence that the INS has

---

[2] In this regard, it is noteworthy that the Government's 1986 petition for certiorari framed the question presented as:

"Whether 8 U. S. C. § 1252(a), which allows the Attorney General, pending determination of deportability of an alien, to release the alien under bond 'containing such conditions as the Attorney General may prescribe,' permits a condition that forbids the alien to engage in *unauthorized* employment pending determination of deportability." Pet. for Cert. in *INS v. National Center for Immigrants' Rights*, O. T. 1986, No. 86–1207, p. i (emphasis supplied).

This supports the Government's current representation that it has consistently taken the position that the regulation was never intended to interfere with an alien's right to engage in authorized employment.

[3] The critical sentence in the regulation states that the condition shall be included "unless the District Director determines that employment is appropriate." 8 CFR § 103.6(a)(2)(ii) (1991). This language places the burden on the alien of demonstrating that employment is appropriate, but it seems inconceivable that the District Director could determine that employment that had already been authorized was not "appropriate."

[4] In response to critical comments on the proposed rule during the rulemaking process, the agency categorically stated that "permanent resident aliens are not affected by these release conditions. Until such time as permanent resident status is lost, the permanent resident alien has the right to work in the United States, if released on bond. The Service, therefore, has no intention of applying this condition to a permanent resident alien in exclusion or deportation proceedings." 48 Fed. Reg. 51143 (1983).

[5] "Individuals maintaining a colorable claim to U. S. Citizenship and permanent resident aliens, authorized to work in the United States under 8 CFR 109.1(a)(1), shall not be subject to this general prohibition until such time as a final administrative determination of deportability .has been made." INS Operating Instruction 103.6(i) (Dec. 7, 1983).

imposed such a condition on any such alien.[6]   We therefore accept the Solicitor General's representation that the INS does not intend to apply the bond condition to prohibit authorized employment.

Accordingly, our decision today will not answer any of the questions concerning the validity of a regulation having the broader meaning ascribed to this regulation by the Court of Appeals.   We thus have no occasion to consider whether the release of an alien who is authorized to work could be subjected to a "no-work" condition.

## IV

Section 242(a) of the INA grants the Attorney General authority to release aliens under bonds "containing such conditions as the Attorney General may prescribe."[7]   In ruling

---

[6] The individual plaintiffs alleged that enforcement of the no-work condition would make it difficult, if not impossible, for them to employ counsel and to obtain their release pending a determination of their deportability. None of them, however, alleged that he or she had been authorized to work in the United States before commencement of his or her deportation proceeding.   See App. 34–41.   (Although one plaintiff alleged that he had been employed for about six years, he did not allege that he had been authorized to accept work.   See id., at 36.)

[7] Title 8 U. S. C. § 1252(a) provides in pertinent part—

"Apprehension and deportation of aliens

"(a)  Arrest and custody; review of determination by court; aliens committing aggravated felonies; report to Congressional committees

"(1)  Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody.   Except as provided in paragraph (2) [regarding mandatory detention of aliens convicted of aggravated felonies], any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (A) be continued in custody; or (B) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (C) be released on conditional parole.   But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion, and the alien may be returned to custody under the warrant which initiated the proceedings

that the Attorney General's discretion under this section was limited, the Court of Appeals relied on two cases in which we have interpreted similarly broad language in this statutory scheme: *United States* v. *Witkovich*, 353 U. S. 194 (1957), and *Carlson* v. *Landon*, 342 U. S. 524 (1952).

In *Witkovich*, we considered the scope of the Attorney General's statutory authority to require deportable aliens to provide the INS with information about their "circumstances, habits, associations and activities, and other information . . . deemed fit and proper." 8 CFR § 242.3(c)(3) (1956). Although the challenged regulation seemed clearly authorized by the words of the statute, the Court concluded that Congress had only intended to authorize "questions reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue." 353 U. S., at 202. Relying on *Witkovich*, the Court of Appeals held that § 1252(a) should also be given a narrow construction.

This case differs from *Witkovich* in important ways. Writing for the Court, Justice Frankfurter explained the reasons for placing a limiting construction on the statutory language:

> "The language of § 242(d)(3), if read in isolation and literally, appears to confer upon the Attorney General unbounded authority to require whatever information he deems desirable of aliens whose deportation has not been effected within six months after it has been commanded. The Government itself shrinks from standing on the breadth of these words. But once the tyranny

against him and detained until final determination of his deportability. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability."

of literalness is rejected, all relevant considerations for giving a rational content to the words become operative. A restrictive meaning for what appear to be plain words may be indicated by the Act as a whole, by the persuasive gloss of legislative history or by the rule of constitutional adjudication, relied on by the District Court, that such a restrictive meaning must be given if a broader meaning would generate constitutional doubts." *Id.*, at 199.

In this case, the Government's argument proceeds on the assumption that the "Act as a whole"—including its concern with the employment of excludable aliens—should define the scope of the Attorney General's discretion. It is respondents who would excise the interest in preventing unauthorized employment from the statutory scheme and confine the Attorney General's bonding authority to the limited purpose of ensuring the presence of aliens at their deportation hearings. Moreover, the contested regulation, when properly construed as applicable only to *unauthorized* employment, does not raise "constitutional doubts" and therefore does not militate in favor of a narrow construction of the organic statute. In short, the Court of Appeals' reliance on *Witkovich* was misplaced.

The majority below also relied on *Carlson.* In that case, the Court upheld the Attorney General's detention (under § 23 of the Internal Security Act of 1950) of deportable members of the Communist Party on the ground that they posed a threat to national security. The Court of Appeals read that case narrowly, as standing for the proposition that the Attorney General may exercise his discretion under § 1252(a) to protect the Nation from active subversion.

This reading of *Carlson* is too cramped. What was significant in *Carlson* was not simply the threat of "active subversion," but rather the fact that Congress had enacted legislation based on its judgment that such subversion posed a threat to the Nation. The Attorney General's discretion

sanctioned in *Carlson* was wholly consistent with Congress' intent: "Detention [was] part of [the Internal Security Act]. Otherwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings." 342 U. S., at 538. Thus, the statutory policy that justified the detention was the congressional determination that the presence of alien Communists constituted an unacceptable threat to the Nation.

In this case, the stated and actual purpose of no-work bond conditions was "'to protect against the displacement of workers in the United States.'" 48 Fed. Reg. 51142 (1983) (citation omitted). We have often recognized that a "primary purpose in restricting immigration is to preserve jobs for American workers." *Sure-Tan, Inc.* v. *NLRB*, 467 U. S. 883, 893 (1984); see also 8 U. S. C. § 1182(a)(14) (defining as a class of excludable aliens those "seeking to enter the United States, for the purpose of performing skilled or unskilled labor" without the appropriate authorization).[8] The contested regulation is wholly consistent with this established concern of immigration law and thus squarely within the scope of the Attorney General's statutory authority.

## V

As a related ground supporting invalidation of the regulation, the Court of Appeals ruled that the regulation did not provide for "individualized decisions" as required by the Act. We agree that the lawful exercise of the Attorney General's discretion to impose a no-work condition under § 1252(a) requires some level of individualized determination. Indeed in the absence of such judgments, the legitimate exercise of

---

[8] For an early statement of this policy, see H. R. Rep. No. 1365, 82d Cong., 2d Sess., 50–51 (1952) (discussing the INA's "safeguards for American labor"). This policy of immigration law was forcefully recognized most recently in the IRCA.

discretion is impossible in this context. We reached a similar conclusion with respect to the determination at issue in *Carlson,* noting that the findings of "evidence of membership plus personal activity in supporting and extending the [Communist] Party's philosophy concerning violence g[ave] adequate ground for detention." 342 U. S., at 541.

However, we believe that the no-work condition regulation, when properly construed and when viewed in the context of the complex regime of immigration law, provides the individualized determinations contemplated in the statute. As noted above, we accept the Attorney General's interpretation of the regulation as affecting only those aliens who may not lawfully accept employment in this country. In addition, the operating instructions issued to INS personnel in connection with this regulation expressly state that individuals maintaining a colorable claim of citizenship shall not be subject to the no-work condition, see n. 5, *supra,* and the INS has stated that "[a]liens who have applied for asylum will not be affected by these regulations." 48 Fed. Reg. 51143 (1983). These facts substantially narrow the reach of the regulation.

Moreover, the Solicitor General has advised us that, in enforcing the regulation, the INS will make "an initial, informal determination [as to] whether the alien holds some status that makes work 'authorized.'" Brief for Petitioners 35. The alien's burden in that proceeding is easily met,[9] for aliens who are authorized to work generally possess documents establishing that status. Some persons so authorized carry so-called "green cards," see *Saxbe* v. *Bustos,* 419 U. S. 65,

---

[9] The Solicitor General also notes that "in those rare cases where an alien claims work authorization by status but is unable readily to document such status[,] a preliminary showing of likely success on the merits . . . would be grounds for temporary relief." Brief for Petitioners 36, n. 26 (citing 8 CFR § 274a.12(c)(13)(iii) (1991)).

66–68 (1974), others carry employment authorization documents, see 8 CFR § 274a.12(a) (1991),[10] or registration numbers that will readily identify their status.[11]

This informal process is enhanced by two additional provisions. First, 8 CFR § 103.6(a)(2)(iii) (1991) establishes a procedure under which individual aliens can seek discretionary relief from the INS and secure temporary work authorization. Second, an alien may seek prompt administrative and judicial review of bond conditions. 8 CFR §§ 3.18, 242.2 (1991).

Taken together all of these administrative procedures are designed to ensure that aliens detained and bonds issued under the contested regulation will receive the individualized determinations mandated by the Act in this context.

For these reasons, we conclude that 8 CFR § 103.6(a)(2)(ii) (1991) is consistent with the Attorney General's statutory authority under § 242(a) of the INA. The judgment of the Court of Appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[10] This section sets forth the various classes of aliens authorized to accept employment; in each case the INS issues to the alien a document confirming that authorization. Importantly, the INS regulations implementing IRCA also provide for the issuance of such a document pending the resolution of amnesty proceedings. See 8 CFR § 245a.2(n) (1991).

[11] We realize that the regulation effectively establishes a presumption that undocumented aliens taken into custody are not entitled to work. In view of the fact that over 97 percent of those aliens apparently do not contest their deportability and instead agree to voluntary deportation, *INS* v. *Lopez-Mendoza*, 468 U. S. 1032, 1044 (1984), such a presumption is reasonable. Moreover, even within the narrow subclass in which deportability is contested, there is no evidence that the presumption cannot be effectively rebutted by those aliens who are entitled to employment, or who have a colorable claim to the right to work. The fact that the rule may make it more difficult for aliens who are not entitled to work to resist deportation is, of course, not a reason for concluding that the regulation exceeds the Attorney General's statutory authority.