Jinette RODRIGUEZ; Milagros Munoz; Carmen Rivera, Appellants,

v.

**READING HOUSING AUTHORITY; Daniel F. Luckey, in his official capacity as Acting Executive Director of Reading Housing Authority, Appellees.**

No. 93–1188.

United States Court of Appeals, Third Circuit.

Argued Aug. 26, 1993.

Decided Nov. 9, 1993.

Peter Zurflieh (argued) and Geoffrey M. Biringer, Cent. Pennsylvania Legal Services, Harrisburg, PA, for appellant, Carmen Rivera.

Edwin L. Stock (argued), Margaret K. Collins, and Andrew F. Fick, Roland & Schlegel, Reading, PA, for appellees.

Before: BECKER, NYGAARD, and ALITO, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

Carmen Rivera appeals from a district court order granting summary judgment in favor of the Reading Housing Authority ("RHA") and its executive director on her claims that the RHA's policy regarding public housing applications by minors violated various provisions of federal law. On appeal, Rivera contends that the RHA policy contravenes certain regulations of the federal Department of Housing and Urban Development ("HUD"). We hold that the RHA policy does not violate those regulations as currently interpreted by HUD, and we therefore affirm the order of the district court.

I.

The factual background of this case is set out in some detail in the published opinion of the district court. *Rivera v. Reading Hous-ing Authority,* 819 F.Supp. 1323, 1326–28 (E.D.Pa.1993). In brief, the relevant background is as follows.

The RHA is a Pennsylvania public housing authority. Pursuant to the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.,* the RHA has entered into annual contribution contracts with the Secretary of HUD, and these contracts have required the RHA to comply with the Housing Act and HUD regulations.

Before July 1991, the RHA's Admission and Occupancy Policy contained the following provision:

No housing unit under the jurisdiction of the RHA shall be rented to any applicant who has not attained the age of eighteen (18) years, unless said person be determined to be an "emancipated minor" entitled to contract for necessities, or other person, under said age, able to establish that he is legally able to execute for himself and members of his family, to be housed by the RHA, a binding and enforceable contract for necessities.

*See* 819 F.Supp. at 1327 n. 4. The RHA interpreted this policy to require a minor applicant to obtain a judicial decree of emancipation. *See id.*

In about March 1991, the RHA revised its Admissions and Occupancy Policy, and HUD approved the revision in July of that year. The revision, which took effect on July 23, expressly states that minor applicants must obtain a judicial decree of emancipation in order to be eligible to rent RHA-administered public housing.[1]

In May 1991, prior to the date when the revised policy took effect, Rivera and David Gonzalez, the man with whom she was living, filed with the RHA a written application for public housing. At that time, Rivera was 16 years old. The RHA responded to this application by sending Rivera a letter stating that she would have to obtain a judicial decree of

---

1. The revised policy provides:

*Emancipated Minor*—An "Emancipated Minor" is a minor under the age of eighteen (18) who has been determined by the judicial system to be an emancipated minor by judicial decree.

No housing unit under the jurisdiction of the Authority shall be rented to any applicant who has not attained the age of eighteen (18) years, unless said applicant has been determined to be an emancipated minor by the courts and is entitled to contract for necessities.

*See* 819 F.Supp. at 1326 n. 3.

emancipation. Rivera did not seek such a decree. Instead, her attorney wrote to the RHA objecting to that requirement and explaining that under Pennsylvania law minors may enter into binding contracts for "necessaries." In September, the RHA denied Rivera's application for failure to comply with its policy.

In December 1991, Rivera and two other named plaintiffs filed this action under 42 U.S.C. § 1983, contending that the RHA's policy regarding minor tenants violated, among other provisions of federal law, the Housing Act, HUD implementing regulations, and the Due Process Clause of the Fourteenth Amendment. Their complaint sought declaratory and injunctive relief, as well as damages. After the plaintiffs' motion for class certification was denied and two of the named plaintiffs were voluntarily dismissed without prejudice, the district court granted summary judgment in favor of the defendants and against Rivera. The court held that the RHA policy did not violate any of the provisions of federal law on which Rivera relied. She then took the present appeal.[2]

## II.

■ On appeal, Rivera has abandoned the argument that the RHA policy violates the Housing Act itself or the Due Process Clause. She maintains, however, that the policy violates two HUD regulations. The first of these, 24 C.F.R. § 960.204(c)(1) (1993), provides that the tenant selection policy of a public housing agency may not "automatically deny admission to a particular group or category of otherwise eligible applicants (e.g., unwed mothers or families with children born out of wedlock)." The other regulation, 24 C.F.R. § 960.205(a) (1993), provides:

> The criteria to be established and information to be considered shall be reasonably related to individual attributes and behavior of an applicant and shall not be related to those which may be imputed to a particular group or category of persons of which

an applicant may be a member. See, e.g., Section 960.204(c).

"Read together," Rivera maintains, "these two provisions prohibit [public housing agency] admissions requirements that deny public housing automatically to a category of applicants on the basis of imputed characteristics." Appellants' Br. at 26 (footnote omitted). Rivera argues that the RHA policy violates these regulations because it "imputes an inability to contract to all minors who fail to meet its judicial decree of emancipation requirement." Id. at 29.

Rivera does not dispute that these regulations permit a public housing agency to refuse to enter into a lease with a minor who cannot execute a binding contract under state law. Moreover, all of the parties agree with the district court that under Pennsylvania law a minor can enter into an enforceable contract for "necessaries" and that whether housing is a "necessary" for a particular minor depends upon whether a parent or guardian of the minor is able and willing to furnish the minor with housing. See 819 F.Supp. at 1331–33. Rivera argues, however, that the HUD regulations require the RHA itself to determine whether housing represents a "necessary" for each minor applicant. Rivera maintains that the RHA policy violates the HUD regulations because it makes an exception for only those minors who have been decreed to be emancipated and not for unemancipated minors for whom housing is a "necessary." We disagree with Rivera's argument.

## III.

In explaining why we cannot accept that argument, we will proceed in two steps. First, we will explain why we believe that the RHA policy is expressly authorized by a provision in HUD's Public Housing Occupancy Handbook, a publication issued by HUD to assist local housing authorities in complying with HUD regulations and contribution contracts. Second, we will explain why we believe that this Handbook is entitled to def-

---

**2.** Although Rivera is now no longer a minor, this appeal is not moot because she is seeking to recover the damages that she claims she suffered as a result of having to pay higher rent than that charged for an RHA unit.

erence and why it represents a permissible interpretation of the regulations.

A. Section 4–2 of the Handbook provides in relevant part as follows:

*Policy*

(1) The PHA must determine whether each applicant....

....

(b) would be old enough ... to sign a lease and abide by its terms.

....

(4) The PHA may set a minimum age for admission to avoid entering into leases which would not be valid or enforceable under the applicable law.

....

*Discussion*

(1) PHAs should be aware that many states allow persons who have not reached the age of majority to sign a lease if they have been declared an "emancipated minor." An emancipated minor is often a teenager with a child or a married couple where both husband and wife are under age 18.[3]

These provisions of the Handbook must be read against the backdrop of the generally prevailing rules governing the enforceability of contracts against minors. While the law on this subject varies from state to state, the predominant rule is that a minor's contracts are generally voidable but that contracts for what are known as "necessaries" are enforceable. *See, e.g.,* 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 4.4 at 379, § 4.5 at 385 (1990); 5 Richard A. Lord, *Williston on Contracts* §§ 9:5, 9:18 (4th ed. 1993); Restatement (Second) of Contracts, § 14 (1981). These rules are of ancient origin. As stated in *Williston on Contracts:* "By the 15th century, it seems to have been well settled that an infant's bargain was in general void at his election, that is voidable, and also that he was liable for necessaries." 5 Lord, *supra,*

§ 9:2 at 5–6 (footnote omitted). The term "necessaries" means "goods that are necessary, considering [the minor's] position and station in life." *Id.* § 9:18 at 149. Shelter may constitute a "necessary" if a minor's parents or guardian cannot or will not provide it. *Id.* §§ 9:19, 9:20; 1 Farnsworth, *supra,* § 4.5 at 385–86. Moreover, "in most states, it is provided that by decree of court the disabilities of an infant may be removed." 5 Lord, *supra,* § 9:4 at 21–22. Such statutes typically provide for, among other things, "emancipation for contractual capacity purposes." *Id.* § 9:4 at 22.

In light of this background, the meaning of Section 4.2 of the Handbook seems clear. Section 4.2 permits a public housing authority to set a minimum age for admission that corresponds with the age of majority under state law and to reject all applicants below that age with the possible exception of those who have been decreed by a court to be emancipated. Section 4.2 does not require a public housing agency to create an additional exception for unemancipated minors for whom housing is a "necessary." As noted, the rule regarding the enforceability of a minor's contract for a "necessary" is very old and well known, and we must therefore assume that the Handbook's failure to mention an exception based on this rule was not accidental.

■ B. We now turn to the question whether the rule set out in Section 4.2 of the Handbook represents a correct interpretation of the HUD regulations on which Rivera relies. An agency's interpretation of its own regulations is entitled to substantial deference. *See, e.g., Immigration & Naturalization Serv. v. National Ctr. for Immigrants' Rights, Inc.,* —— U.S. ——, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991); *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Commonwealth of Pa. Office of*

---

**3.** The district court noted that when Section 4.2 of the Handbook was revised in July 1991, the above-quoted language concerning minors was omitted. *See* 819 F.Supp. at 1331 n. 10. HUD has explained, however, that this omission was inadvertent and that it "intends to continue to apply" the omitted language. *See* Letter from Michael H. Reardon, Assistant General Counsel,

HUD, to Geoffrey M. Biringer, Esq., Central Pa. Legal Servs. (Apr. 9, 1992), App. at 337. The district court therefore concluded, and all parties in this case agree, that the omitted language is still operative. See Appellant's Br. at 19; Appellees' Br. at 41. We will proceed on the same premise.

*the Budget v. Department of Health & Human Servs.*, 996 F.2d 1505, 1511 (3d Cir. 1993). Indeed, the Supreme Court has stated that such an interpretation is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

Under this standard, the interpretation set out in Section 4.2 of the Handbook must be sustained. The first of the pertinent regulations, 24 C.F.R. § 960.204(c)(1), states, as previously noted, that a public housing agency may not "automatically deny admission to a particular group or category of *otherwise eligible applicants.*" (Emphasis added). Section 4.2, however, appears to take the position that a minor who retains the general ability to disaffirm his or her contracts need not be regarded as an "eligible" applicant within the meaning of this regulation. The second regulation, 24 C.F.R. § 960.205(a), provides that a public housing agency's admission criteria must be "reasonably related to individual attributes and behavior," but Section 4.2 seems to embody the view that a minor's retention of the general ability to disaffirm contracts is an "individual attribute" within this regulation. Whether or not these interpretations are the ones that we would adopt if called upon to construe the HUD regulations *de novo*, these interpretations are not plainly erroneous or inconsistent with the regulations, and accordingly we accept them. Moreover, since the RHA policy at issue here does precisely what Section 4.2 allows—bars minors except for those who have obtained a decree of emancipation—that policy must be sustained.

▉ Rivera argues that the RHA's rule is contrary to "compelling social policy consid-erations." Appellants' Br. at 24 n. 15. She contends that it is difficult, burdensome, and inhibiting for minors to seek a judicial decree of emancipation and that such a decree may have deleterious consequences with respect to matters other than housing. She also maintains that the RHA could easily determine for itself in a simple administrative proceeding whether housing constitutes a necessary for each minor applicant [4] and that leasing units to minors for whom housing is found to be a necessary after such a proceeding would not expose the RHA to any substantial financial risk. The RHA responds that it should be allowed some measure of discretion to select the procedure that it believes is best. The RHA also contends that the procedure suggested by Rivera would expose it to financial risk because, as the district court observed, "[i]n the absence of an emancipation decree and determination, RHA would not be certain whether a lease agreement will be enforceable and would run the risk of entering into unenforceable contracts with minors." 819 F.Supp. at 1334. We have not been given the authority to decide freestanding public policy disputes of this nature. That authority rests with Congress and HUD, the federal agency with expertise in this field.

### IV.

Rivera's final argument is that the RHA policy is improper because "there is neither statutory nor common law authority for a Pennsylvania court to issue a decree of emancipation for the purpose of declaring a minor's ability to contract." Appellants' Br. at 24. She further argues that the procedure required by the RHA policy is "uncertain and untested." *Id.* at 23. The RHA, however, submitted the affidavit of the Honorable Arthur Grim of the Court of Common Pleas,

---

4. Rivera argues that language in Section 4.2 of the Handbook requires each public housing agency to determine for itself whether a minor has the ability to enter into a binding contract for housing and that a public housing agency may not avoid this obligation by requiring that a minor obtain a decree of emancipation. In support of this argument, Rivera relies on, among other things, the statement in Section 4.2(a)(1) of the Handbook that "[t]he PHA must determine whether each applicant ... would be old enough to sign a lease." We cannot accept this argument, however, in light of the fact that the "Discussion" that follows Section 4.2 refers expressly to minors who "have been declared 'emancipated minors.'" See page 964, *supra*. As noted in text, we believe that this language specifically approves the type of policy that the RHA has adopted.

Berks County. Judge Grim, who is the Administrative Head of Orphan's Court and Juvenile Court, stated in his affidavit:

4. Though perhaps not commonly pursued, there is a nonstatutory procedure by which a minor may petition the Court of Common Pleas for an adjudication that the minor is emancipated from his or her parent or guardian for purposes of determining the minor's ability to contract for, among other things, housing.

5. The aforementioned emancipation proceeding may be commenced by petition filed with the Clerk of Court, docketed as a Miscellaneous Action, and would involve a hearing in which factual evidence is presented concerning the minor's status.

6. A petition for emancipation would be assigned to a Judge presiding over juvenile and/or family matters and would be heard in Miscellaneous Court.

In light of this uncontroverted affidavit, we must reject Rivera's argument. If the Pennsylvania courts should subsequently refuse to entertain such emancipation petitions, a challenge to the RHA policy may be renewed at that time.

## V.

In conclusion, we hold that the RHA policy concerning public housing applications by minors does not violate current HUD regulations as interpreted by that department. Consequently, we affirm the order of the district court.