**CHENEY RAILROAD COMPANY, INC., Petitioner,**

v.

**RAILROAD RETIREMENT BOARD, Respondent.**

**TYSON RAILROAD, INC., Petitioner,**

v.

**RAILROAD RETIREMENT BOARD, Respondent.**

**Nos. 93–1621, 93–1636.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1994.

Decided March 24, 1995.

William P. Jackson, Arlington, VA, argued the cause for petitioner Cheney R. Co., Inc. With him on the briefs was David C. Reeves, Arlington, VA.

Fritz R. Kahn, Washington, DC, argued the cause and filed the briefs for petitioner Tyson R.R., Inc.

Catherine C. Cook, Gen. Counsel, R.R. Retirement Bd., Chicago, IL, argued the cause for respondent. With her on the brief were Stephen A. Bartholow, Deputy Gen. Counsel, Thomas W. Sadler, Asst. Gen. Counsel, Marguerite P. Dadabo, Gen. Atty., and Kelli D. Simmons, Gen. Atty., R.R. Retirement Bd., Chicago, IL.

Before: WILLIAMS, HENDERSON, and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

The issue in these appeals is whether feeder railroads that are exempt from most

of the requirements of the Interstate Commerce Act remain subject to the Railroad Retirement Act ("RRA") and the Railroad Unemployment Insurance Act ("RUIA"). Two feeder railroads, petitioners Cheney Railroad Company, Inc. and Tyson Railroad, Inc., challenge the decision of the Railroad Retirement Board that they were "employers" under the RRA and the RUIA and therefore subject to the requirements of those two statutes. Petitioners maintain that the term "employer" as used in the railroad employee benefit statutes is limited to entities subject to a portion of the Interstate Commerce Act from which they have properly exempted themselves. Because the language and history of the RRA and the RUIA demonstrate that feeder railroads are "employers" under these statutes, we deny the petitions for review.

## I.

In 1989, the Interstate Commerce Commission, acting pursuant to § 401 of the Staggers Rail Act, 49 U.S.C. § 10910 (1988), authorized Cheney Railroad Company, Inc. ("Cheney") to acquire approximately 53 miles of railroad line. *Cheney R.R. Co.*, 5 I.C.C.2d 250, 276 (1989). In the same proceeding, the Commission authorized the predecessor of Tyson Railroad, Inc. ("Tyson") to acquire a much shorter segment of rail line. *Id.*[1] The Staggers Rail Act provides that the operators of such railroad lines "may elect to be exempt from any of the provisions of this title, except that such a[n operator] may not be exempt from the provisions of chapter 107 of this title with respect to transportation under a joint rate." 49 U.S.C. § 10910(g)(1).[2] The Commission honored petitioners' elections of this exemption. *Cheney*, 5 I.C.C.2d at 262, 264, 277.

Cheney and Tyson requested determinations from the Board regarding whether they were "employers" under the RRA and the RUIA. They asserted, in effect, that their exercise of the Staggers Rail Act exemption from portions of title 49 also operated to exempt them from coverage of the RRA and the RUIA because the coverage of these statutes is predicated on the applicability of part of the Interstate Commerce Act ("ICA"), which was codified in subtitle IV of title 49.[3] On July 29, 1993, the Board denied their appeals from a decision on reconsideration of the Deputy General Counsel, thereby ruling that although Cheney and Tyson had properly invoked the Staggers Rail Act exemption, they were nevertheless "employers" under the RRA and the RUIA.[4] In affirming and adopting the reconsideration opinion of its Deputy General Counsel, the Board concluded that Congress intended the Staggers Rail Act exemption to be narrow and the remedial RRA and RUIA to encompass broadly all railroad carriers in the United States. The Board ruled that because Cheney and Tyson remained subject to the joint rate provisions of chapter 107 of title 49, they necessarily remained subject, at least in part, to the ICA, and therefore their employees were covered by the RRA and the RUIA. Cheney and Tyson seek review of the Board's decisions pursuant to 45 U.S.C. §§ 231g & 355(f).

## II.

Whether Cheney and Tyson are employers under the RRA and the RUIA present questions of law that turn on the interpretation of not only the RRA and the RUIA, but also the Staggers Rail Act and the ICA. Because the ICA and the Staggers Rail Act are not the Board's governing statutes, but rather are administered by the Commission, *Society of Plastics Indus., Inc. v. ICC*, 955 F.2d 722, 727 (D.C.Cir.1992) (court's review of Commission's interpretation of ICA governed by *Chevron U.S.A., Inc. v. Natural*

---

1. The background is set forth in *Cheney R.R. Co. v. I.C.C.*, 902 F.2d 66 (D.C.Cir.1990).

2. The original 49 U.S.C. § 10910(g)(1) (1988) also contains a footnote following the quoted word "title," stating: "So in original. Probably should be 'subtitle,'."

3. *See* 49 U.S.C. §§ 10101–11917.

4. The Board's opinion in Cheney's case states that a majority of the Board "affirms and adopts the reconsideration decision of the Deputy General Counsel in Legal Opinion L–90–73.1, dated June 26, 1991." Tyson's brief states that the Board likewise split in denying its appeal on the same date; Tyson did not file an appendix, and consequently our review is based on the record in the appendix for the Cheney case.

*Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); *Black v. ICC,* 762 F.2d 106, 114–15 (D.C.Cir. 1985) (same, Staggers Rail Act), we review *de novo* the Board's decisions that because petitioners are subject to provisions of the ICA, they are employers under the RRA and the RUIA. *See Johnson v. United States R.R. Retirement Bd.,* 969 F.2d 1082, 1088–89 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1842, 123 L.Ed.2d 467 (1993); *see also Department of Treasury v. FLRA,* 837 F.2d 1163, 1167 (D.C.Cir.1988).[5]

Throughout this case, the Board, its Deputy General Counsel, and the petitioners have disputed the definition of "employer" in the RRA and the RUIA based on their various analyses of the codified versions of the railroad employee benefit statutes. However, the language that Congress enacted in these statutes differs from that in the current version of the United States Code in a way that resolves the dispute. Moreover, the codified language is fully consistent with the statutes as enacted. Accordingly, we first turn to the statutory language as it was enacted and as it has now come to be codified and then address the rationale adopted by the Board.

### A.

Congress enacted the first version of the RRA in 1934, Pub.L. No. 73–485, 48 Stat. 1283 (1934), but the Supreme Court held it unconstitutional. *See Railroad Retirement Bd. v. Alton R.R. Co.,* 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468 (1935). Congress quickly responded by passing a second RRA in 1935. Pub.L. No. 74–399, 49 Stat. 967 (1935). The coverage of this statute, like its predecessor, was broad, reaching "any express company, sleeping-car company, or carrier by railroad, *subject to the Interstate Commerce Act.*

..." *Id.* (emphasis added). The Act's title reflects its broad scope: "AN ACT To establish a retirement system for employees of carriers subject to the Interstate Commerce Act, and for other purposes." *Id.; see INS v. National Center for Immigrants' Rights, Inc.,* 502 U.S. 183, 189, 112 S.Ct. 551, 556, 116 L.Ed.2d 546 (1991) (titles within a statute "can aid in resolving an ambiguity in the legislation's text"). This statute was amended in 1937 to apply to "an express company, sleeping-car company, or carrier by railroad, *subject to part I of the Interstate Commerce Act.*" Pub.L. No. 75–162, § 1(m), 50 Stat. 307, 309 (1937) (emphasis added). There is no indication in the legislative history regarding why the language was changed or evincing any intent to narrow the scope of coverage under the statute. *See* H.Rep. No. 1069, 75th Cong., 1st Sess. 2 (1937) (new RRA expands other aspects of the definition of employer to increase coverage); 81 Cong. Rec. 6,082, 6,223 (1937) (same). The change appears merely to reflect the inapplicability of the then recently-passed part II of the ICA, the "Motor Carrier Act," which did not pertain to railroads. *See* Pub.L. No. 74–255, 49 Stat. 543 (1935).[6] The RUIA was enacted in 1938 to require employers subject to the RRA to fund unemployment insurance for their employees. Pub.L. No. 75–722, 52 Stat. 1094 (1938). Its coverage was identical to that of the RRA. *Id.* § 1(b), 52 Stat. at 1094; *see also* H.Rep. No. 2668, 75th Cong., 3d Sess. 1–3 (1938) (repeatedly stating that the employers covered by the RUIA are identical to those covered by the RRA).

The codified versions of the RRA and the RUIA in the current United States Code contain different language regarding the coverage of these statutes. Petitioners and the

---

5. The Board correctly concedes that deference is less appropriate in these circumstances than when the Board interprets only those statutes which it administers. Petitioners correctly contend that deference is inappropriate, but they do so on the incorrect assumption that their appeals are governed by *Chevron,* and that deference is unwarranted because the statutory language in the RRA and the RUIA is clear and unambiguous.

6. The RRA was again amended in 1974, but the language of its coverage was not altered in any material way. Only the conjunction was changed, so that the statute covers "any express company, sleeping-car company, *and* carrier by railroad, *subject to part I of the Interstate Commerce Act.*" 88 Stat. 1305, 1305 (1974) (emphasis added). It is clear from the legislative history that this change was intended to have no effect on the statute's coverage. *See* H.Rep. No. 1345, 93d Cong., 2d Sess. 29 (1974) (stating that entities described in § 1(m) of the 1937 Act are now covered by § 1(a)(1)(i) of the 1974 Act); S.Rep. No. 1163, 93d Cong., 2d Sess. 28 (1974) U.S.Code Cong. & Admin.News 1974, 5702, 5729 (same).

Board relied on this codified language, which defines an employer as "any express company, sleeping car company, and carrier by railroad, *subject to subchapter I of chapter 105 of title 49.*" 45 U.S.C. § 231(a)(1)(i) (1988) (emphasis added).[7] The discrepancies between the language in the Statutes at Large and the corresponding codifications in the United States Code arise from the reorganization and codification of the ICA and related statutes in 1978. Act of Oct. 17, 1978, Pub.L. No. 95–473, 92 Stat. 1337 ("Codification Act"). As part of that codification, the provisions of the ICA were assembled in a vastly different configuration than in earlier enactments and codifications. *See* Table preceding 49 U.S.C. (Supp. II 1978). Presumably to avoid problems related to other laws that referred to provisions of the ICA as previously codified, the Codification Act included a provision that "[a] reference to a law replaced by ... this Act ... is deemed to refer to the corresponding provision enacted by this Act." Codification Act § 3(b), 92 Stat. at 1466. On the basis of this provision, the codifiers replaced the references in the RRA and the RUIA to "part I of the Inter-

state Commerce Act"[8] with the phrase which the Board construed in the instant case, "subchapter I of chapter 105 of title 49." 45 U.S.C. §§ 231(a)(1)(i) & 351(b) (1982).[9]

■ Congress clearly intended that the Codification Act merely reorganize, not substantively change, the law. This intent is obvious from the title of the statute: "An Act To revise, codify, and enact *without substantive change* the [ICA] and related laws as subtitle IV of title 49, [U.S.C.]," 92 Stat. at 1337 (emphasis added), and from the legislative history. *See* H.REP. No. 1395, 95th Cong., 2d Sess. 9 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3009, 3018 ("this bill makes no substantive change in the law").[10] Before the 1978 codification, part I of the ICA comprised 49 U.S.C. §§ 1–27. 49 U.S.C. § 27 (1976) ("This chapter may be cited as part I of the Interstate Commerce Act."). Although some portions of part I of the ICA were subsequently codified in subchapter I,[11] other portions of part I were codified elsewhere, *including joint rate provisions codified in chapter 107 of title 49.*[12]

---

7. The analogous language in the codification of the RUIA is not identical, but it is the same for purposes of these appeals. *See* 45 U.S.C. § 351(b) (1988) (covering "an express company, sleeping-car company, or carrier by railroad, *subject to subchapter I of chapter 105 of title 49*") (emphasis added).

8. Codifiers had earlier added "[49 U.S.C. 1 et seq.]" to clarify this phrase. 45 U.S.C. §§ 231(a) & 351(b) (1976) (brackets in original).

9. The way this happened is odd, although probably not relevant. When the Codification Act was enacted, the codifiers put notes following 45 U.S.C. §§ 231 & 351, which stated that the Codification Act had repealed the ICA (correct) and that "Title I is now covered by subchapter I (§ 10501 et seq.) of chapter 105 of Title 49" (incorrect, because "Title I" presumably should read "part I" and because, as we note, part I is covered by other chapters of the recodified title 49). However, at this time, the sections of the Code themselves were not altered. *See* 45 U.S.C. § 231 (Supp. V 1981) (referring readers to the "main edition," *i.e.* (1976), for text of § 231(a)). It was only in the 1982 Code that the implications in the earlier codification notes were implemented and the texts of §§ 231(a) & 351(b) were changed.

10. In addition, codification statutes are presumed to effect no change in the existing law. *See Muniz v. Hoffman,* 422 U.S. 454, 470–72, 95

S.Ct. 2178, 2187–88, 45 L.Ed.2d 319 (1975); *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 227, 77 S.Ct. 787, 790, 1 L.Ed.2d 786 (1957); *cf. CNA Financial Corp. v. Donovan,* 830 F.2d 1132, 1149 (1987) (noting that this assumption has greater force when the codified version would "demonstrably conflict with settled precedent or policy, *or significantly impede the operation of other, preexisting statutes,*" than when the codified version is "not fundamentally inconsistent with what went before") (emphasis added), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988).

11. *See* 49 U.S.C. §§ 10501, 10503(a), 10505 (historical and statutory notes). However, other portions of subchapter I are derived from other parts of the ICA. *See* 49 U.S.C. §§ 10502, 10503(b), 10504 (historical and statutory notes).

12. For example, the requirement codified in 1978 in 49 U.S.C. § 10701(a) that "[d]ivisions of joint rates ... must be made without unreasonable discrimination against a participating carrier and must be reasonable," corresponds to 49 U.S.C. § 1(4) (1976) ("It shall be the duty of every such common carrier ... in the case of joint rates ... to establish just, reasonable, and equitable divisions thereof, which shall not unduly prefer or prejudice any of such participating carriers."). *See* H.REP. No. 1395, 95th Cong., 2d Sess. 66–67 (1978), *reprinted in* 1978

It is well-settled that although the United States Code is prima facie evidence of what the law is, 1 U.S.C. § 204(a), the Statutes at Large constitutes legal evidence of what the law is. *Id.* § 112.[13] When the two differ, the Statutes at Large controls.[14] *United States v. Welden,* 377 U.S. 95, 98 n. 4, 84 S.Ct. 1082, 1085, n. 4, 12 L.Ed.2d 152 (1964); *Stephan v. United States,* 319 U.S. 423, 426, 63 S.Ct. 1135, 1136, 87 L.Ed. 1490 (1943) (per curiam); *Five Flags Pipe Line Co. v. Department of Transp.,* 854 F.2d 1438, 1440 (D.C.Cir.1988); *see also United States Nat'l Bank v. Independent Ins. Agents of America, Inc.,* ── U.S. ──, ──, 113 S.Ct. 2173, 2179, 124 L.Ed.2d 402 (1993). As noted, because the railroad employee benefits statutes, as described in Statutes at Large, apply to railroads "subject to part I of the [ICA]," and the Codification Act was not intended to alter this reference substantively, it necessarily follows that the RRA and the RUIA govern all railroads "subject to part I of the [ICA]" regardless of where the provi-

sions corresponding to part I are currently codified. Furthermore, because the ICA's joint rate provisions, now codified at 49 U.S.C. chapter 107, were originally included in part I of the ICA, the term "employer" as defined in the RRA and the RUIA encompasses those railroads subject to the joint rate provisions. Petitioners concede that they are subject to the joint rate provisions. *See* 49 U.S.C. § 10910(g)(1).[15] As a result, petitioners are employers under the railroad employee benefit statutes.

### B.

Even if the RRA and the RUIA had been enacted with the language supplied by the codifiers, we would reach the same result. Under the codification, the RRA and the RUIA apply to any "express company, sleeping-car company, or carrier by railroad, subject to subchapter I of chapter 105 of title 49." 45 U.S.C. § 231(a)(1)(i). Chapter 105 of title 49, entitled "Jurisdiction," contains

U.S.C.C.A.N. 3009, 3075–76. Similarly, the provision in the 1978 codification of 49 U.S.C. § 10705(a)(1) that the "Commission may, and shall when it considers it desirable in the public interest, prescribe ... joint rates [and] the division of joint rates ... for a common carrier providing transportation subject to the jurisdiction of the Commission under subchapter I, II, ... or III of chapter 105 of this title," corresponds to 49 U.S.C. § 15(3) (1976) ("The Commission may, and it shall whenever deemed by it to be necessary or desirable in the public interest ... establish ... joint rates ... applicable to the transportation of passengers or property by carriers subject to this chapter."). *See* H.Rep. No. 1395, 95th Cong., 2d Sess. 72–73 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3009, 3081–82. *See also* Table preceding 49 U.S.C. (Supp. II 1978) (indicating the correspondences noted above, as well as the correspondence between numerous other provisions of part I of the ICA and chapter 107 of the 1978 codification of title 49).

It is unclear whether the reference to "part I of the ICA" contained in the RRA and the RUIA was intended to be static, *i.e.* refer to part I of the ICA as it existed when each of the railroad employee benefit statutes was enacted, or flexible, *i.e.* refer to part I of the ICA including future amendments. However, we need not address this issue because "part I of the ICA" contained the same relevant provisions from before 1935 until the present. As early as 1934, the ICA included provisions regarding transportation under a joint rate. *See* 49 U.S.C. §§ 1(4) & 15(3) (1934); *see also* 49 U.S.C. § 27 (1934) ("This chapter may be cited as the 'Interstate Com-

merce Act.'"). In 1935, the ICA was expanded and the old version of the ICA, including the joint rate provisions, was redesignated "part I." Act of August 9, 1935, Pub.L. No. 74–255, 49 Stat. 543, 543; *see also* 49 U.S.C. § 27 note (1976). When the ICA was recodified, "part I" had the same meaning, 49 U.S.C. § 27 (1976), and the joint rate provisions remained in part I. *See* 49 U.S.C. §§ 1(4) & 15(3) (1976).

13. Although some titles of the United States Code have been enacted into positive law, title 45, including the codifications of the RRA and the RUIA, has not. *See* 1 U.S.C. § 204 note (Supp. V 1993).

14. The Board did not assist in the detection or resolution of this difference. To the contrary, the only written explanation for the Board's ruling purports to quote from the RRA but does not conform to either the Statutes at Large or the United States Code. The Board erroneously asserted in its decision that the RRA defined employer as "any express company, sleeping-car company, and carrier by railroad, subject to the Interstate Commerce Act."

15. *Black v. ICC,* 762 F.2d 106 (D.C.Cir.1985), is therefore inapposite. *Black* implied that the Staggers Rail Act exemption "by its very terms embraces chapter 105 [of title 49 U.S.C.]." *Id.,* 762 F.2d at 114. Our holding is based on the uncontested fact that the Staggers Rail Act exemption does not embrace the joint rate provisions of chapter 107 of 49 U.S.C.

four subchapters, I through IV, each granting the Commission jurisdiction over a type of transportation. These four jurisdictional subchapters march in exact parallel to the similarly numbered parts of the ICA—part I (railroad and pipeline carriers), part II (motor carriers), part III (water carriers), and part IV (freight forwarders). Subchapter I appears to be the only source of Commission jurisdiction over carriers providing transportation "by rail carrier, express carrier, [and] sleeping car carrier." 49 U.S.C. § 10501(a)(1).

Thus, the differences between the provisions of "part I of the Interstate Commerce Act" and the provisions of "subchapter I of chapter 105 of title 49" do not alter the outcome of these appeals. As chapter 105 is explicitly a "jurisdictional" provision, it understandably leaves out the operative provisions governing the Commission's exercise of its various heads of jurisdiction. The portions of subchapter I that do not derive from part I of the ICA do not bring within the Commission's jurisdiction any express company, sleeping car company, or carrier by railroad that was not subject to Commission regulation under part I. Section 10502 of subchapter I, for example, derives from 49 U.S.C. §§ 303(a) & 902(d) (1976), two provisions originally located in part II (motor carriers) and part III (water carriers) of the ICA. Those provisions simply made clear (just as does § 10502) that express-carrier transportation "by motor vehicle" or "by water" that is otherwise regulated under part I is excluded from regulation under parts II and III. See id. § 303(a)(14) (1976) (exempting from the definition of "common carrier by motor vehicle" "transportation by motor vehicle by an express company to the extent that such transportation has heretofore been subject to chapter 1 of this title"); id. § 902(d) (1976) (exempting from the definition of "common carrier by water" "transportation by water by an express company subject to chapter 1 of this title"). Similarly, § 10504 serves only to exempt from Commission jurisdiction under subchapter I "rail mass transportation provided by a local public body." Such transportation was previously exempted from the entire ICA by 45 U.S.C. § 744(j) (1976) ("no local public body

which provides mass transportation services by rail ... shall, with respect to the provision of such services, be subject to the Interstate Commerce Act"). See § 10504 (historical and revision notes). The only other additional provision, § 10503(b), neither restricts nor expands the group of companies subject to Commission regulation; it just requires the Commission to hold a hearing before acting under § 10503(a).

The codifiers' phrase and the Public Law's phrase lead to the same result: The definition of "employer" under the RRA and the RUIA includes exactly those rail, express, and sleeping car carriers subject to regulation by the Commission under part I of the ICA.

Petitioners have not contested the proposition that their operations fall into the general category of carriers described by chapter 105 and regulated under part I of the ICA. They argue that 49 U.S.C. § 10910(g)(1), which allows feeder lines to "elect to be exempt from any of the provisions of [the ICA], except ... [the joint rate] provisions of chapter 107," permits them to exempt themselves from the provisions of chapter 105. But this leads to a logical inconsistency. Since chapter 107's joint rate provisions only apply to an "express company, sleeping-car company, or carrier by railroad" that is subject to Commission jurisdiction under chapter 105, see, e.g., § 10705(a), a carrier cannot be exempt from 105 and subject to 107.

### C.

Although petitioners misconstrue the references in the RRA and the RUIA to the ICA, they raise one objection to the Board's decisions relevant here. Petitioners note that they are subject to only a small subset of part I of the ICA, rather than all of it, and, as a result, they contend that they cannot be considered employers subject to these acts. The RRA and the RUIA do not expressly address whether the railroad employee benefit statutes apply to railroads subject to *all* of part I of the ICA or subject to *some* of part I of the ICA. However, the legislative history makes clear that Congress intended these benefit statutes to be construed

broadly. *See* S.REP. No. 1163, 93d Cong., 2d Sess. 11 (1974) (stating that the purpose of the 1974 RRA was "establishing equitable retirement benefits for all railroad employees"); H.REP. No. 1345, 93d Cong., 2d Sess. 11 (1974) (same); H.REP. No. 1069, 75th Cong., 1st Sess. 2 (1937) (stating that both the 1935 and 1937 RRAs were designed to provide pensions for employees "of the Nation's railroad transportation system"); *see also United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 168, 101 S.Ct. 453, 456, 66 L.Ed.2d 368 (1980) (noting that 1937 RRA was intended to benefit "persons who pursued careers in the railroad industry"). *See generally R.J. Corman R.R. Co. v. Palmore,* 999 F.2d 149, 151–52 (6th Cir.1993) (noting the long-standing and pervasive nature of federal regulation of railroads, including the RRA and the RUIA). Given this broad purpose and the protective character of the statutes, there appears no basis on which to conclude that the RRA and the RUIA do not cover feeder railroads such as petitioners, which are subject only to a portion of part I of the ICA.

■ Because amendments by implication are disfavored, *United States v. Welden,* 377 U.S. 95, 103 n. 12, 84 S.Ct. 1082, 1087 n. 12, 12 L.Ed.2d 152 (1964); *Natural Resources Defense Council, Inc. v. Hodel,* 865 F.2d 288, 318 (D.C.Cir.1988), the court will not lightly infer that the Staggers Rail Act intended to exempt feeder railroads from the RRA and the RUIA. The Staggers Rail Act evinces an intent that feeder railroads remain fully subject to statutes regulating labor. Congress enacted the Staggers Rail Act in part to cut the cost and governmental red tape involved in running a feeder line. *See* H.REP. No. 1035, 96th Cong., 2d Sess. 35, 38, 127–30 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3978, 3980, 3983, 4071–74. Thus the Staggers Rail Act allows feeder lines to exempt themselves from much regulation. However, the Act does not permit exemption from labor regulation. As examples, a feeder line must use the employees

who worked on the railroad before it became a feeder line, *see* 49 U.S.C. § 10910(e), and the railroad that sold its trackage rights to a newly-created feeder line must ensure that the sale does not disadvantage any of its employees. *Id.* §§ 10910(j), 11347.[16] Thus, to the extent that Congressional intent with regard to the treatment of railroad employee benefits can be gleaned from the Staggers Rail Act, it is that the RRA and the RUIA remain in force with respect to feeder lines.

Accordingly, we hold that the Board correctly ruled that petitioners were employers under the RRA and the RUIA. Those statutes, as enacted and codified, apply to railroads subject to part I of the ICA, including the joint rate provisions now codified in chapter 107 of title 49 U.S.C. Petitioners are indisputably subject to the joint rate provisions. That petitioners are subject to a portion of part I of the ICA, rather than all of it, is irrelevant in the absence of any Congressional intent to include the RRA and the RUIA within the Staggers Rail Act exemption for feeder railroads. Therefore, we deny the petitions for review.

16. The Staggers Rail Act is protective of labor interests in other similar provisions as well. For example, § 213 of the Act, 49 U.S.C. § 10505, provides the Commission with the authority to exempt certain carriers from the relevant provisions of title 49. However, the Commission is forbidden from exercising this authority "to relieve a carrier of its obligation to protect the interests of employees as required by this subtitle." *Id.* § 10505(g)(2).